RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOEL NATHAN DUFRESNE,

           *Petitioner-Appellant,*

      *v.*

CARMEN DENISE PALMER, Warden,

           *Respondent-Appellee.*

No. 17-1340

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cv-01210—Paul Lewis Maloney, District Judge.

Decided and Filed:  November 22, 2017

Before:  ROGERS, SUTTON, and BUSH, Circuit Judges.

_____

**ORDER**

_____

PER CURIAM.  Joel Nathan Dufresne, a Michigan prisoner proceeding pro se, appeals the district court's judgment denying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  Dufresne has filed a notice of appeal, which this court construes as an application for a certificate of appealability.  *See* Fed. R. App. P. 22(b)(2).

In 2006, a jury convicted Dufresne of three counts of first-degree criminal sexual conduct ("CSC") and six counts of third-degree CSC.  The convictions were based upon sexual acts that Dufresne committed against his then-girlfriend, Angela Wiertalla, with whom he shared a son. Wiertalla reported the acts to police after Dufresne left her and traveled to Florida with their son. Dufresne admittedly belonged to an organization known as the "Creativity Movement," which was considered by law enforcement to be a white-supremacist group.  At one time, the FBI

investigated whether individuals associated with the Creativity Movement were involved in the murder of the mother and husband of Judge Joan Lefkow, a federal district judge in Chicago.

The trial court sentenced Dufresne to 50 to 75 years of imprisonment on the first-degree CSC counts and 25 to 50 years of imprisonment on the third-degree CSC counts. Appellate counsel filed a motion to remand for an evidentiary hearing on the effectiveness of trial counsel's assistance pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). The Michigan Court of Appeals remanded, and a *Ginther* hearing was held, after which the Emmet County Circuit Court concluded that Dufresne failed to show that trial counsel performed ineffectively. The Michigan Court of Appeals affirmed, and the Michigan Supreme Court denied leave to appeal. *People v. Dufresne*, No. 273407, 2008 WL 5055959, at *1 (Mich. Ct. App. Oct. 14, 2008) (per curiam), *appeal denied*, 764 N.W.2d 266 (Mich. 2009). In 2010, Dufresne filed a motion for relief from judgment, which the Emmet County Circuit Court denied. The Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal. *People v. Dufresne*, No. 305490 (Mich. Ct. App. Dec. 27, 2011), *appeal denied*, 821 N.W.2d 672 (Mich. 2012).

Proceeding through counsel, Dufresne then filed a federal habeas petition raising five grounds for relief: (1) trial counsel performed ineffectively; (2) the trial court erred by granting a motion in limine to exclude evidence and the prosecutor intimidated crucial witnesses; (3) appellate counsel failed to raise meritorious issues; (4) repeated references to his post-arrest, post-*Miranda* silence violated *Doyle v. Ohio*, 426 U.S. 610 (1976); and (5) repeated references to his ties to the Creativity Movement deprived him of a fair trial. The district court denied habeas relief, concluding that Dufresne procedurally defaulted grounds one and two and was not entitled to habeas relief on the merits of grounds three through five.

A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner may meet this standard by showing that reasonable jurists could debate whether the petition should have been determined in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). If the petition was denied on procedural grounds, the petitioner must show, "at least, that jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), if a state court previously adjudicated a petitioner's claims on the merits, a district court may not grant habeas relief unless the state court's adjudication of the claim resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where AEDPA deference applies, this court must evaluate the district court's application of § 2254(d) to determine "whether that resolution was debatable amongst jurists of reason." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

## I. *Procedural Default of Grounds One and Two*

The district court found that Dufresne procedurally defaulted his first two grounds for relief because the Emmet County Circuit Court declined to review these claims under Michigan Court Rule 6.508(D)(3). It also found that Dufresne failed to make an adequate showing of cause and prejudice or a miscarriage of justice to overcome the procedural default.

### A. *Procedural Default — Ground One*

Ground one of Dufresne's habeas petition alleged that trial counsel performed ineffectively by failing to (a) review a videotape of a March 9, 2006 statement that Dufresne made to Michigan State Police Detective Gwyneth White-Erickson and use the videotape to impeach White-Erickson and show that Dufresne consistently denied engaging in the sexual conduct alleged by Wiertalla; (b) review White-Erickson's interview of Wiertalla of February 23, 2006, and use that interview to impeach Wiertalla's trial testimony; (c) investigate the murders of Judge Lefkow's relatives and present evidence showing that Dufresne was not involved; (d) interview and present witnesses whose testimony would have been helpful to the defense; (e) investigate and present evidence relating to Wiertalla's mental health, history of

drug and alcohol abuse, and criminal history; and (f) object to the introduction of evidence regarding Dufresne's ties to the Creativity Movement.

In ground one of his habeas petition, Dufresne appears to recite only those arguments raised in his motion for relief from judgment—issues (a) through (e). *See* R. 1 at 43–59. The district court understandably thought that Dufresne was not raising the "claims of ineffective assistance of [trial] counsel that were raised on direct appeal." R. 40 at 37. But elsewhere in his petition, Dufresne states that he is also raising the issues that he "r[a]n on direct appeal" like issue (f), trial counsel's failure to object to prejudicial evidence. R. 1 at 23. Dufresne's ultimate discussion of that issue in a single paragraph is cursory to say the least. But reasonable jurists could debate the district court's procedural conclusion that Dufresne did not assert this claim in his petition. *See Slack*, 529 U.S. at 484.

We still can't disturb the district court's denial of a COA on this claim unless reasonable jurists could debate whether it "states a valid claim of the denial of a constitutional right." *Id.* Our court has never addressed the meaning of *Slack*'s "valid claim" language in a published opinion. But it means at least this: To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.

This approach best accords with AEDPA's text and *Slack*'s interpretation of its meaning. First, under AEDPA we may issue a COA "only if the applicant has made a *substantial showing of the denial of a constitutional right*." 28 U.S.C. § 2253(c)(2) (emphasis added). The best reading of that language is that our inquiry goes to both the procedural component of the district court's decision and the merits lurking behind it. Second, the *Slack* Court framed its standard in terms of what "jurists of reason would find . . . debatable." 529 U.S. at 484. Although courts should not conduct a full merits inquiry at the COA stage, the key question remains "the debatability of the *underlying constitutional claim*"—not the debatability of how the claim was stated in the petition. *Miller-El*, 537 U.S. at 342 (emphasis added).

That all makes perfect sense. At the end of the day, "the gate keeping function of certificates of appealability [is to] separate the constitutional claims that merit the close attention

of . . . this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2017). We should add that, in many cases, the difference that we highlight today will not matter. A petitioner who can state a constitutional-type claim may often be able to state one that is arguably meritorious. But that won't always be the case. It isn't here.

At least six circuits recognize that *Slack* requires some assessment of a claim's merit. *See United States v. Doe*, 810 F.3d 132, 146–48 (3d Cir. 2015); *United States v. Baxter*, 761 F.3d 17, 23 (D.C. Cir. 2014) (stating that, under § 2253, *Slack*'s "valid claim of a denial of a constitutional right" standard is the same as its "substantial showing of the denial of a constitutional right" standard); *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014); *Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir. 2003); *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002); *Roberts v. Sutton*, 217 F.3d 1337, 1340 (11th Cir. 2000). In deciding whether to issue a COA after a district court has denied a petition on procedural grounds, each of these courts takes at least a threshold look—or a peek—at the merits of a petitioner's claims. A few circuits appear to take a different approach, though that is far from clear. *See, e.g.*, *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000). Again, it's not clear that the Seventh Circuit has adopted a different approach. All that matters for our purposes is that a modest assessment of the merits of the claim is required.

In the final analysis, Dufresne needed to show that reasonable jurists could debate whether his constitutional claim under issue (f) had merit. As the Michigan trial court persuasively explained, Dufresne's counsel chose to discuss Dufresne's membership in the Creativity Movement because it was "an integral part of the story" of his relationship with Wiertalla and was widely published in local newspapers. R. 19 at 3–4. Given that this information was already presented by defense counsel at trial and that Dufresne does not object to that decision in his petition, it wasn't deficient for his counsel to fail to object. As to the testimony suggesting that the Creativity Movement may have been tied to a local murder, the weight of the evidence—not to mention Dufresne's conduct on the stand—show that he suffered no prejudice.

Dufresne raised subclaims (c), (d), and (e) in his motion for post-conviction relief. The Emmet County Circuit Court declined to review these claims under Michigan Court

Rule 6.508(D)(3). Subsection (D)(3) of Rule 6.508 provides that, unless one of several exceptions applies, a post-conviction court may not grant the defendant relief if the grounds that he raises "could have been raised on appeal from the conviction and sentence or in a prior motion." Mich. Ct. R. 6.508(D)(3); *see Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). The Emmet County Circuit Court's discussion shows that the court "actually . . . relied on [Rule 6.508(D)(3)'s] procedural bar as an independent basis for its disposition of the case," *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003), as it engaged in a lengthy discussion of the cause-and-prejudice and "good cause" exceptions to the procedural-default rule and specifically cited subsection (D)(3) as the basis for its decision to deny relief. Claims denied under Rule 6.508(D)(3) in state court are procedurally defaulted on federal habeas review. *Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012). Accordingly, reasonable jurists could not debate the district court's conclusion that subclaims (c), (d), and (e) were procedurally defaulted.

Subclaims (a) and (b) were not raised in state court, either on direct appeal or in Dufresne's motion for post-conviction relief. Reasonable jurists could not debate the district court's ultimate conclusion that these arguments are procedurally defaulted because they are unexhausted and no state-court remedies remain. *See* Mich. Ct. R. 6.502(G); *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996).

### B. *Procedural Default — Ground Two*

In ground two of his habeas petition, Dufresne argued that (a) the trial court deprived him of his due process right to present a defense and his right to confront adverse witnesses when it granted the state's motion in limine to exclude certain evidence, and (b) the state intimidated crucial witnesses to prevent them from testifying. Dufresne raised these arguments in his motion for post-conviction relief. The Emmet County Circuit Court denied that motion, concluding that Dufresne "has failed to carry his burden pursuant to MCR 6.508(D)." R. 20 at 11. Specifically, it found that Dufresne "has not shown good cause for failing to raise the alleged errors in his postappeal motion in an[] earlier proceeding . . . [and] failed to show actual prejudice from the alleged irregularities supporting his claim for relief." *Id*. It is clear from this explanation that the Emmet County Circuit Court invoked Michigan Court Rule 6.508(D)(3) to deny relief.

Accordingly, reasonable jurists would agree that these claims were procedurally defaulted.  *See Amos*, 683 F.3d at 727; *Guilmette*, 624 F.3d at 291.

### C.  *Cause and Prejudice/Miscarriage of Justice*

Where, as here, a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The miscarriage-of-justice exception requires a prisoner to present new reliable evidence showing that he is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995).

The district court concluded that Dufresne could not show cause to overcome the procedural default because he failed to show that his appellate counsel performed ineffectively by failing to raise his underlying claims on direct appeal.  For the reasons discussed in Section II, *infra*, reasonable jurists could not debate that conclusion.

Reasonable jurists also could not debate the district court's conclusion that Dufresne failed to present new evidence showing that he is actually innocent, so as to satisfy the miscarriage-of-justice exception.  *See id.*  The "new" evidence that Dufresne submitted in support of his claims consisted of affidavits filed by a private investigator and friends and acquaintances of Dufresne and Wiertalla.  Even assuming that these affidavits could qualify as "new" evidence, they are insufficient to show that Dufresne is actually innocent of the specific acts for which he was convicted, because none of the affiants stated that they were present when the criminal acts occurred or indicated that they otherwise had information related to those specific acts.

Dufresne also submitted police reports detailing prior offenses committed by both him and Wiertalla, but because these reports could have been discovered by the exercise of due diligence prior to trial, they do not qualify as new evidence.  In any event, the reports do not establish Dufresne's actual innocence and, in some cases, likely would have been harmful to the

defense.  Accordingly, Dufresne's first two grounds for relief do not deserve encouragement to proceed further.

## II.        *Ineffective Assistance of Appellate Counsel (Ground Three)*

In ground three of his habeas petition, Dufresne argued that appellate counsel performed ineffectively by failing to raise on direct appeal the issues set forth in grounds one and two of his habeas petition.  The district court found that the Emmet County Circuit Court did not unreasonably apply clearly established federal law or unreasonably determine the facts when it concluded that appellate counsel did not perform ineffectively.

As noted previously, Dufresne's appellate counsel argued on direct appeal that trial counsel performed ineffectively by failing to object to the introduction of evidence regarding his ties to the Creativity Movement.  Reasonable jurists therefore could not debate the district court's ultimate conclusion that Dufresne was not entitled to habeas relief based on his erroneous claim that appellate counsel did not raise this issue.

Dufresne did not argue in his motion for post-conviction relief that appellate counsel performed ineffectively by failing to argue that trial counsel should have (a) reviewed and presented the March 9, 2006 statement that he made to White-Erickson; and (b) reviewed and presented Wiertalla's February 23, 2006 statement to White-Erickson.  Arguably, Dufresne failed to exhaust these two claims.  But because Dufresne has not had an opportunity to show cause and prejudice to overcome any resulting procedural default, this court addresses these issues on the merits.  *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

At trial, Detective White-Erickson testified that, while interviewing Dufresne, Dufresne asked to speak to a lawyer and she did not question him further.  Dufresne contended in his habeas petition that a videotape of his March 9, 2006 statement to White-Erickson shows that this is not true and that White-Erickson continued to question him for three hours after he requested an attorney.  He also contended that a videotape of Wiertalla's February 23, 2006 statement shows that the sequence of events that she provided to White-Erickson differed from the sequence of events that she described during her trial testimony.  But Dufresne submitted no evidence to support these claims.  He provided neither a copy of the videotapes nor a transcript

of the interviews, and he may not rely on his self-serving characterizations of this evidence.  *See Bray v. Andrews*, 640 F.3d 731, 738–39 (6th Cir. 2011).  Because Dufresne has presented no evidence from which a court could conclude that Dufresne's defense was prejudiced by trial counsel's alleged errors, reasonable jurists would agree that Dufresne also cannot show that there is a reasonable probability that appellate counsel could have successfully argued that trial counsel performed ineffectively.  *See Evans v. Hudson*, 575 F.3d 560, 565 (6th Cir. 2009).  Accordingly, these claims do not deserve encouragement to proceed further.

Five ineffective-assistance-of-appellate-counsel arguments remain. Specifically, Dufresne argues that appellate counsel performed ineffectively by failing to argue on direct appeal that (1) trial counsel should have (a) investigated the murders of Judge Lefkow's relatives and presented evidence showing that Dufresne was not involved, (b) interviewed and presented witnesses whose testimony would have been helpful to the defense, and (c) investigated and presented evidence relating to Wiertalla's mental health, history of drug and alcohol abuse, and criminal history; (2) the trial court erred by granting the state's motion in limine to exclude certain evidence; and (3) the state intimidated crucial witnesses.  All of these arguments were first raised in Dufresne's motion for relief from judgment.

Appellate counsel does not have an obligation to raise every possible claim that a client may have, and counsel's performance is presumed to be effective.  *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008) (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)).  To succeed on a claim that appellate counsel performed ineffectively, a petitioner also "must demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise [an] issue on appeal, 'he would have prevailed.'"  *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

A. *Appellate Counsel's Failure to Argue That Trial Counsel Should Have Presented Evidence Showing That Dufresne Was Not Responsible for the Murder of Judge Lefkow's Relatives*

Dufresne has not made a substantial showing of the denial of a constitutional right as to his appellate-counsel claim regarding the murder of Judge Lefkow's relatives because he did not submit any evidence in support of his allegation that they were murdered by an individual who had no connection to him or the organization to which he belonged. The allegation that trial counsel was deficient for failing to present such evidence—and that appellate counsel was deficient for failing to challenge trial counsel's performance—is therefore unsupported and conclusory. As a result, reasonable jurists would agree that Dufresne cannot make the requisite showing of deficient performance or prejudice. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012).

B. *Appellate Counsel's Failure to Argue That Trial Counsel Should Have Interviewed and Presented Additional Witnesses*

As the district court noted, Dufresne failed to allege in either state court or in his habeas petition that he informed appellate counsel of any potential witnesses who were not investigated by trial counsel. Appellate counsel could not be expected to investigate individuals of whom he was not aware. As both the state court and the district court noted, two potential defense witnesses, Erin Wood and Alicia Rocheleau, were included on the defense's witness list. However, the Emmet County Circuit Court concluded that Rocheleau's testimony would have been inadmissible under Michigan's rape-shield statute. This is an issue of state law that cannot be revisited in a federal habeas proceeding. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Because Rocheleau's proposed testimony would have been inadmissible, reasonable jurists could not debate the district court's conclusion that appellate counsel did not perform ineffectively by failing to argue that trial counsel should have presented that testimony.

Dufresne attached to his habeas petition an affidavit submitted by Wood, in which Wood stated that she had been friends with Wiertalla for six or seven months, until August 2005; that Dufresne and Wiertalla "were never vicious or violent with each other"; that Wiertalla never told her that Dufresne was abusive, that she was afraid of him, or that he forced her to do various sex

acts; and that her discussions with Wiertalla led her to believe that Wiertalla enjoyed the "somewhat wild and unusual sex life" that she had with Dufresne. R. 1-2 at 7–8. Even assuming that this evidence would have been admissible, reasonable jurists would agree that there is no reasonable likelihood that the outcome of Dufresne's direct appeal would have been different if appellate counsel had argued that trial counsel should have presented this testimony.

As the Emmet County Circuit Court noted, trial testimony presented by both a Michigan State Police Trooper and Dufresne himself established that Dufresne assaulted Wiertalla. At least one specific assault, committed on June 25, 2005, occurred during the timeframe of Wood's friendship with Wiertalla. The jury also heard recorded telephone calls during which Dufresne "apologized [to Wiertalla] 'for all the sick mean shit that I've done to you,'" including specific acts of which he was convicted. R. 20 at 4. All of this evidence contradicts Wood's statement that Dufresne and Wiertalla "were never vicious or violent with each other" and undermines any implication that Wood was fully aware of the nature of Dufresne and Wiertalla's relationship. Because Wood's testimony likely would have carried little weight, reasonable jurists would agree that Dufresne cannot make the requisite showing of prejudice.

### C. *Appellate Counsel's Failure to Argue That Trial Counsel Should Have Investigated and Presented Evidence Relating to Wiertalla's Mental Health, Drug and Alcohol Abuse, and Issues with Law Enforcement*

Dufresne attached to his habeas petition a March 1, 2005 police report showing that Dufresne reported that Wiertalla had assaulted him; records showing that Wiertalla obtained a personal protection order against Leon Kerbersky on August 8, 2000; and records showing that Wiertalla had prior misdemeanor convictions for operating a vehicle while intoxicated and third-degree retail fraud and a prior felony conviction for operating a vehicle under the influence and causing serious injury. Reasonable jurists would agree that trial counsel could have reasonably concluded that the very minimal impeachment value of these documents was not worthwhile and could detract from other impeachment arguments that he was attempting to make—namely, the argument that Wiertalla had fabricated the allegations against Dufresne to obtain custody of her son. Because there is little or no likelihood that the underlying ineffective-assistance-of-trial-counsel claim would have been successful on appeal, reasonable

jurists could not debate the district court's conclusion that Dufresne was not entitled to habeas relief on this ineffective-assistance-of-appellate-counsel claim.

D.  *Appellate Counsel's Failure to Challenge the Trial Court's Grant of the State's Motion in Limine*

Prior to trial, the state filed a motion in limine asking the trial court to bar the defense from raising the following issues:  (1) Wiertalla's "prior sexual conduct with [Dufresne] and prior and subsequent conduct with others"; (2) "[u]nsubstantiated allegations that the victim has accused other individuals of criminal sexual conduct against her"; (3) Wiertalla's "mental health or issues regarding psychological or psychiatric care [Wiertalla] has received"; (4) "[t]he dismissal of other counts against [Dufresne]"; (5) Wiertalla's criminal record; and (6) Wiertalla's prior drug use.  R. 1-7 at 1–2.  Defense counsel responded that he did not intend to raise issues 1, 2, and 5.  The trial court granted the motion in limine "as to the matters that are uncontested" and instructed the parties "not to bring up the matters that are covered in items 3, 4, and 6 in the presence of the jury," although it stated that the parties "may certainly ask for a hearing out of the presence of the jury to have a determination whether or not such things are permissible."  R. 11 at 5.  Because the trial court granted the motion in limine only with respect to the issues that defense counsel agreed not to raise, there is no reasonable likelihood that a challenge to this ruling on appeal would have resulted in a reversal of Dufresne's convictions.  *See Webb*, 586 F.3d at 399; *Fautenberry*, 515 F.3d at 642.

E.  *Appellate Counsel's Failure to Raise a Witness-Intimidation Argument*

Finally, Dufresne argued that appellate counsel performed ineffectively by failing to argue that trial counsel should have raised a witness-intimidation argument.  He submitted several affidavits in support of this claim.  Julianne Cuneo, a private investigator retained by post-conviction counsel, stated that she interviewed Brandie DeGroff, whose mother had witnessed a physical altercation between Wiertalla and Dufresne.  Cuneo stated that DeGroff told her that DeGroff's mother had spoken to Dufresne by telephone while he was in jail and that after the conversation, police had warned her "not to talk about what she saw."  R. 1-2 at 2.  Cuneo also stated that, after she had researched the case for several days, a state trooper called her to make "sure [she] was 'on the up and up'" because "he was 'curious' about what [Cuneo]

was doing." *Id.* Robert Poppell, another potential witness, stated in an affidavit that he developed an intimate relationship with Wiertalla after Dufresne left for Florida. He stated that he attended Dufresne's sentencing "but [he] was not in court before that because [he] was told by the prosecutor and the lady sheriff that they didn't need [his] testimony" and the sheriff "said she did not want [him] at the courthouse until sentencing" because he would "complicate things" based on his relationship with Wiertalla. R. 1-2 at 10.

First, because Cuneo was retained by post-conviction counsel, the intimidation that she alleged necessarily occurred after the conclusion of Dufresne's direct appeal. Second, to the extent that Cuneo's affidavit detailed alleged police intimidation of DeGroff and DeGroff's mother, Cuneo's statements would have been inadmissible hearsay if they had been presented for the purpose of "prov[ing] the truth of the matter asserted." Mich. R. Evid. 801(c). Furthermore, there is no indication that appellate counsel was aware of this alleged intimidation. There is also no evidence in the record to show that appellate counsel was aware of the intimidating statements alleged by Poppell. In any event, the statements alleged by Poppell did not amount to witness intimidation. *See United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007).

### III.   *Prosecutor's Comments on Dufresne's Post-Arrest, Post-*Miranda *Silence   (Ground Four)*

In his fourth ground for relief, Dufresne argued that the prosecutor improperly elicited testimony about his post-arrest, post-*Miranda* silence during trial, in violation of *Doyle v. Ohio*. The district court presumed that the testimony challenged by Dufresne violated *Doyle* but concluded that the testimony amounted to harmless error.

Reasonable jurists could not debate the district court's ultimate conclusion that Dufresne was not entitled to habeas relief on this claim. *Doyle* holds that a state prosecutor may not use a defendant's post-arrest, post-*Miranda* silence to impeach a defendant's exculpatory testimony. *Doyle*, 426 U.S. at 611. Here, the challenged testimony was not used for impeachment purposes. White-Erickson and Michigan State Police Trooper James Armstrong, who both testified before Dufresne, were asked general questions about their interview of Dufresne. Both witnesses testified that Dufresne initially spoke to them but eventually requested a lawyer. This testimony was not directly elicited by the prosecutor's questions but was given in response to questions

about statements that Dufresne made during his interview. Moreover, the prosecutor did not use this testimony to impeach Dufresne during cross-examination, nor did he mention Dufresne's invocation of his *Miranda* rights during closing arguments. Because the state did not use White-Erickson's and Armstrong's testimony to impeach Dufresne, the Michigan Court of Appeals' determination that "the police officers' testimony did not violate [Dufresne's] right to a fair trial," *Dufresne*, 2008 WL 5055959, at *1, was not an unreasonable application of *Doyle*. *Cf. United States v. Robinson*, 357 F. App'x 677, 683 (6th Cir. 2009).

Even assuming, as the district court did, that the admission of the testimony violated *Doyle*, a constitutional error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). An error is not harmless if there is "a 'reasonable *probability*' that a trial error affected or influenced the verdict." *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Here, the references to Dufresne's post-arrest, post-*Miranda* silence were relatively brief and were not elicited by the prosecutor. The prosecutor did not comment on the remarks, nor did he ask the jurors to draw any inferences from Dufresne's silence or request for a lawyer. Furthermore, the evidence of Dufresne's guilt was overwhelming, and his primary defenses— that the sexual acts were consensual and that Wiertalla fabricated the assaults—were based on witness credibility and had little to no relevance to Dufresne's post-arrest silence. Accordingly, reasonable jurists could not debate the district court's conclusion that any *Doyle* error was harmless. *See Brecht*, 507 U.S. at 639.

## IV.     *Prosecutorial Misconduct (Ground Five)*

Finally, in his fifth ground for relief, Dufresne argued that the prosecutor engaged in misconduct by asking questions about his ties to the Creativity Movement. In reviewing a prosecutorial-misconduct claim, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Young*, 470 U.S. 1, 11–12 (1985).

Reasonable jurists could not debate the district court's conclusion that Dufresne was not entitled to habeas relief on this claim. First, on federal habeas review, the district court had to accept the state court's determination that most of the testimony pertaining to Dufresne's involvement with the Creativity Movement was admissible under state law. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68. Second, even assuming that White-Erickson's testimony regarding her investigation into the murders of Judge Lefkow's relatives was inadmissible, a "prosecutor does not commit misconduct by asking questions that elicit inadmissible evidence." *Key v. Rapelje*, 634 F. App'x 141, 148 (6th Cir. 2015). Dufresne does not contend that White-Erickson's testimony was false, nor could he, as he has submitted documentation showing that he was, at one point, being investigated by the FBI in connection with the murders of Judge Lefkow's relatives. Dufresne has not challenged any comments made by the prosecutor himself. In fact, during closing arguments, the prosecutor cautioned jurors to focus on the evidence and "the acts that [Dufresne] committed against Angela Wiertalla," rather than Dufresne's character. R. 14 at 4. Accordingly, this claim does not deserve encouragement to proceed further.

For the foregoing reasons, we **DENY** Dufresne's application for a certificate of appealability.

ENTERED BY ORDER OF THE COURT

_____
Deborah S. Hunt, Clerk