NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0129n.06

No. 20-3613

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 12, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HERSIE R. WESSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| TIM SHOOP, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SUTTON, STRANCH, and NALBANDIAN, Circuit Judges.

Hersie R. Wesson, an Ohio prisoner under sentence of death, appeals the district court's judgment dismissing his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. The district court granted Wesson a certificate of appealability ("COA") for one issue raised in his habeas petition. Wesson has filed an application to expand his COA to include two more issues.

In 2009, a three-judge panel convicted Wesson of two counts of aggravated murder, two counts of attempted murder, two counts of aggravated robbery, one count of having a weapon while under a disability, and one count of tampering with evidence. The convictions were based on Wesson's murder of 81-year-old Emil Varhola and attack on Emil's 77-year-old wife, Mary, after being invited into their home. The panel sentenced Wesson to death. On direct appeal, the Ohio Supreme Court vacated one of Wesson's aggravated murder convictions but affirmed his remaining convictions and the death sentence. *State v. Wesson*, 999 N.E.2d 557, 584 (Ohio 2013).

In 2010, Wesson filed a state petition for post-conviction relief raising twelve grounds for relief, which the trial court denied. The Ohio Court of Appeals affirmed, *State v. Wesson*, No. 25874, 2012 WL 4480109 (Ohio Ct. App. Sept. 28, 2012), and the Ohio Supreme Court denied further review, *State v. Wesson*, 16 N.E.3d 682 (table) (Ohio 2014).

In 2015, Wesson filed a second state petition for post-conviction relief raising sixteen grounds for relief. The trial court concluded that it lacked jurisdiction to consider the successive petition and the Ohio Court of Appeals affirmed. *State v. Wesson*, No. 28412, 2018 WL 1189383 (Ohio Ct. App. Mar. 7, 2018). The Ohio Supreme Court denied further review. *State v. Wesson*, 101 N.E.3d 464 (table) (Ohio 2018).

Also in 2015, Wesson filed his federal § 2254 habeas petition alleging six grounds for relief: (1) his right against self-incrimination was violated when his illegally obtained statement was introduced at trial; (2) his trial counsel rendered ineffective assistance during the guilt phase of the trial by, among other things, failing to properly advise Wesson about his jury waiver; (3) his trial counsel rendered ineffective assistance during sentencing by failing to investigate and present mitigating evidence; (4) he is ineligible for the death penalty because he is intellectually disabled; (5) his due process rights were violated by his state appellate counsel's ineffective assistance; and (6) the death penalty is arbitrary, cruel, and unusual, violating his Eighth and Fourteenth Amendment rights.

The district court denied all but two of Wesson's claims: his claim that he was intellectually disabled (and so ineligible for a death sentence) and an ineffective-assistance-of-counsel claim for not raising the issue. *Wesson v. Jenkins*, No. 5:14 CV 2688, 2020 WL 1066531 (N.D. Ohio Mar. 5, 2020). The court reserved judgment on these two claims until it could conduct an evidentiary hearing. *Id.* at *63. It also granted Wesson a COA for his self-incrimination claim. *Id.* at *67.

After the district court issued its decision, the parties filed a joint motion to stay the case and remand to state court for the evidentiary hearing. The court granted the motion. Then, after the parties agreed that Wesson could properly raise his claims relating to intellectual disability in a second § 2254 petition following the state court proceedings, the district court dismissed those claims without prejudice. As no other claims were pending, the court's judgment became final, and Wesson filed a timely appeal. Wesson also moved to stay this appeal while his state court action is pending, but we denied the motion. *Wesson v. Shoop*, No. 20-3613, 2020 U.S. App.

LEXIS 27033 (6th Cir. Aug. 25, 2020). Wesson now moves to expand his COA to include two more issues from his habeas petition: whether his trial counsel rendered ineffective assistance by (1) failing to properly advise him regarding his jury waiver; and (2) failing to investigate and present mitigating evidence during sentencing.

A COA may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists could "disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When the district court denies a habeas petition on procedural grounds, the petitioner must show both that (1) reasonable jurists would find it debatable whether their underlying constitutional claim is valid (i.e. meritorious); and (2) reasonable jurists would find it debatable whether the district court's procedural ruling was correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017).

The constitutional claims that Wesson seeks to add to his COA are both ineffective-assistance-of-counsel claims. To establish constitutionally ineffective assistance of counsel, Wesson must show that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to investigate a defendant's background and present mitigating evidence at sentencing may constitute deficient performance under *Strickland*. *See Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003). But counsel is not required to investigate "every conceivable line of mitigating evidence." *Id.* at 533. Nor does counsel have a constitutional obligation to present cumulative evidence at a mitigation hearing. *Lang v. Bobby*, 889 F.3d 803, 815 (6th Cir. 2018). As for prejudice, a defendant must show that, "had the jury been confronted with [the] . . . mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (second alteration in original) (quoting *Wiggins*, 539 U.S. at 536).

**Ineffective Assistance Regarding Jury Waiver**

Wesson first contends that his trial counsel incorrectly informed Wesson that his jury waiver could not be retracted. The day after Wesson waived his right to a jury trial, his trial counsel sent an email noting that two days before Wesson had "agree[d] to waive the jury and consent to a panel. He changed his mind a few times since then but he has entered a waiver of jury." R.41-1 at 166. Six years later, Wesson raised this claim in his second state post-conviction petition. With his petition, Wesson filed an affidavit claiming for the first time that, after he signed the waiver, he changed his mind, but counsel incorrectly told him it was too late to withdraw the waiver. *Id.* at 161; *see* O.R.C. § 2945.05. There is no other evidence of this exchange. The state courts denied the petition as successive and untimely. *Wesson*, 2018 WL 1189383 at *5; *Wesson*, 101 N.E.3d 464 (table). When Wesson raised the claim in his federal habeas petition, the district court dismissed it as procedurally defaulted.

Wesson cannot show deficient performance because there is no conclusive evidence that the alleged misstatement of law occurred. Wesson's affidavit, signed six years after the event and standing alone, does little to establish that the misstatement occurred. *See Hoffner v. Bradshaw*, 622 F.3d 487, 500 (6th Cir. 2010); *Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008). And as the district court aptly put it, the only other evidence—trial counsel's emails with the mitigation psychologist—does "nothing more than show what is undisputed: that Wesson wavered in his decision about having a jury trial." R.51 at 53. The email explained that the day *before* Wesson waived his jury right, Wesson had "agree[d] to waive the jury and consent to a panel. He changed his mind a few times since then but he has entered a waiver of jury." R.41-1 at 166. That does not establish that Wesson changed his mind *after* entering the jury waiver, much less that Wesson ever asked to withdraw his waiver or that counsel declined such a request. Because reasonable jurists could not debate that this claim for ineffective assistance of counsel lacks merit, we see no reason to permit review of the district court's dismissal of the claim as procedurally defaulted.

**Ineffective Assistance at Sentencing**

Wesson next argues that his trial counsel should have investigated and presented more mitigating evidence during his sentencing. Counsel asked Wesson's sister Yvette and clinical and forensic psychologist Dr. Smalldon to testify at the sentencing hearing.

Yvette testified about Wesson's traumatic childhood. She explained that they moved frequently and stayed with various family members, their parents were alcoholics, their mother drank while pregnant with Wesson and gave him alcohol to drink as a baby, their father beat him, he witnessed his mother being beaten, and he had multiple incidents of untreated head trauma.

Smalldon testified that Wesson lives with borderline intellectual functioning; depression; alcohol dependence; a personality disorder with passive aggressive, narcissistic, and anti-social features; and fetal alcohol effect from his mother's drinking during her pregnancy. He testified that he did not have enough information to diagnose Wesson with fetal alcohol spectrum disorder, but that Wesson's fetal alcohol effect created similar deficits, like the inability to assess behavioral consequences or respond to social and personal cues. Smalldon also explained that Wesson's various mental and physical impairments meant that Wesson was "very vulnerable to overreacting to things that he perceives as slights or challenges to his very fragile sense of personal competence, and in that sense I certainly think that all of those factors . . . combine to compromise his ability to conform his conduct to the requirements of the law." R.13-26 at 141–42.

Wesson points to other testimony and evidence that he asserts counsel should have presented. He raised parts of this claim in his first state post-conviction petition, which was denied as meritless. *See Wesson*, 2012 WL 4480109 at *7–19; *Wesson*, 16 N.E.3d 682 (table). Wesson raised additional parts of this claim in his second state post-conviction petition, which was denied as successive and untimely. *See Wesson*, 2018 WL 1189383 at *4–5; *Wesson*, 101 N.E.3d 464 (table). When Wesson once again brought the claim in his federal habeas petition, the district court denied it—in part as meritless and in part as procedurally defaulted.

As for the parts of the claim denied as meritless, Wesson first argues that his counsel should have presented his prison records and expert testimony regarding prison culture. This evidence,

he claims, would have demonstrated that he could adapt well to prison if given a life sentence. In evaluating this argument, the Ohio appellate court noted that counsel knew about the prison records because he asked Smalldon to review them. *Wesson*, 2012 WL 4480109 at *10. The court explained that counsel's decision not to present them was reasonable because they contained information about prior convictions as well as mixed work-performance evaluations and information about various disciplinary infractions, including fights with other inmates. *Id.* at *9–10. Wesson's proposed expert testimony, the court added, did not explain how "the tensions of prison life" that caused them would change if Wesson served a life sentence. *Id.* at *9. And it noted that the trial court had already taken Wesson's "cooperative conduct in jail" into account during sentencing. *Id.* at *8. The court concluded that it was objectively reasonable for counsel to decide that emphasizing Wesson's prison records (including through expert testimony) would do more harm than good for Wesson. *Id.* at *10. The district court determined that this was a reasonable application of *Strickland* and not based on an unreasonable finding of fact. Reasonable jurists could not debate the district court's resolution of this claim.

Second, Wesson claims that his counsel should have had more lay witnesses testify about Wesson's life. Here are the witnesses and what they would have said in abridged form:

- Herb Wesson, Wesson's cousin, would have testified that Wesson's parents were alcoholics who provided no guidance for their children, that Wesson began drinking at a young age, and that Wesson lacked ambition.

- Deborah Wells, also Wesson's cousin, would have testified that Wesson's parents were alcoholics who did not provide a stable home environment, that Wesson's father abused the children, that Wesson started drinking at a young age, and that Wesson was frequently shuffled between family members.

- Edgar Lee, a former employer, would have testified that Wesson was a good, reliable worker during the few months he worked for Lee as a handyman.

- Corbitt Norman, Wesson's son-in-law and former fellow inmate, would have testified that Wesson encouraged him to enroll in a prison education program, that Wesson was a

peacekeeper and mentor in prison, and that he once saw Wesson intoxicated from "hooch," an alcoholic drink made in prison. R.12-14 at 46–47.

The Ohio appellate court found the proposed testimony about Wesson's childhood largely cumulative of Wesson's sister Yvette's testimony. *Wesson*, 2012 WL 4480109 at \*14–15. It also reasoned that Lee's testimony would not have altered Wesson's sentencing profile, *see Strickland*, 466 U.S. at 700, especially since the sentencing court already knew from Smalldon's testimony that Wesson had successfully held a job for a few months. *Wesson*, 2012 WL 4480109 at \*14–15. And it found Norman's testimony legitimately excluded because counsel could reasonably wish to avoid testimony about Wesson drinking in prison. *Id.* at \*11. The Ohio appellate court also found no prejudice because the sentencing court already gave Wesson some credit for his behavior in prison, and it is not clear that Norman's testimony would have tipped the scales further. *Id.* On each of these claims, the district court agreed that it was reasonable to find the additional testimony cumulative. It thus concluded that the Ohio appellate court reasonably applied *Strickland* in rejecting this ineffective-assistance-of-counsel claim. Reasonable jurists could not debate the district court's resolution of this claim.

The concept of cumulative evidence, however, does not mean that all evidence after a certain point is always barred. Additional witnesses' testimony, of the type Wesson seeks to introduce here, may present a picture of a person's life in all of its dimensions (such as family, work, or religion) and in the context of his community. *See Rompilla v. Beard*, 545 U.S. 374, 382 (2005); *Wiggins*, 539 U.S. at 523–24; *Jells v. Mitchell*, 538 F.3d 478, 495–96 (6th Cir. 2008). This point is distinct from offering "increased specificity," which may be cumulative. *Jackson v. Bradshaw*, 681 F.3d 753, 770 (6th Cir. 2012); *see also Wong*, 558 U.S. at 23. Instead, it recognizes qualitatively different domains of a person's life which may well "differ in a substantial way–in strength and subject matter–from the evidence actually presented at sentencing." *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005).

Third, Wesson contends that his counsel should have presented his brother's criminal record. Wesson claims that this would have weakened the State's point that Wesson's sister did

not have a criminal record even after suffering through a similar traumatic childhood. The Ohio appellate court found that this omission was not prejudicial. *Wesson*, 2012 WL 4480109 at *13–14. It reasoned that, if the criminal record had been introduced, the State's argument could have been easily tweaked to make a similar (and arguably stronger) point: that Wesson was the only one of his siblings who ever killed anyone, despite the fact that they were all raised in the same circumstances. *Id.* And it added that the only evidence Wesson submitted regarding the criminal record was unauthenticated online printouts. *Id.* The district court determined that the Ohio appellate court's decision reasonably applied *Strickland*. Reasonable jurists could not debate the district court's resolution of this claim.

Fourth, Wesson argues that his counsel should have presented better expert testimony on the link between Wesson's limitations and his crimes. In support, Wesson presents the affidavit of a psychologist who agreed with Smalldon's diagnoses but thought that Smalldon should have focused more on Wesson's antisocial personality disorder. The Ohio appellate court concluded that both psychologists reached essentially the same conclusions and that it was reasonable for counsel to rely on Smalldon's approach, especially because the Ohio Supreme Court has frequently concluded that evidence of antisocial personality disorder has limited mitigation value. *Wesson*, 2012 WL 4480109 at *18. Wesson challenged this decision in his habeas appeal, arguing that the Ohio appellate court made an unreasonable determination of fact when it concluded that both psychologists reached the same conclusions, because the court did not explain the differences in their testimony, including that Smalldon did not sufficiently explain how Wesson's limitations contributed to his crime. The district court rejected this argument, pointing out that the distinct emphases and levels of detail did not render unreasonable the factual finding that their conclusions were the same. And it pointed out that Smalldon *did* testify about the link between Wesson's limitations and his crimes. The court cited Smalldon's testimony that Wesson's mental and physical impairments, including his antisocial personality disorder, meant that Wesson was "vulnerable to overreacting to things that he perceives as slights or challenges to his very fragile sense of personal competence, and in that sense I certainly think that all of those factors . . .

combine to compromise his ability to conform his conduct to the requirements of the law." R.13-26 at 141–42. The district court also agreed with the Ohio appellate court that counsel was effective, adding that just because Wesson believes Smalldon could have testified in a slightly different manner does not make counsel deficient. Reasonable jurists could not debate the district court's resolution of this claim.

As for the parts of the claim deemed procedurally defaulted, Wesson must show that reasonable jurists could debate both the underlying merits of the claim and the district court's procedural ruling. *Slack*, 529 U.S. at 484; *Dufresne*, 876 F.3d at 254. Wesson fails the threshold requirement, as no cognizable claim of ineffective assistance exists.

First, Wesson argues that his counsel should have had more lay witnesses testify about Wesson's life. Here are the witnesses and what they would have said in abridged form:

- Sharon Clark, Wesson's second cousin, would have testified that Wesson had an unstable home life and was a poor student, but was respectful and behaved himself.

- Randall Wesson, Wesson's cousin, would have testified that Wesson's extended family has a history of alcoholism, that Wesson's parents were neglectful, and that Wesson began drinking at a young age.

- Stephen Wesson—another cousin—would have testified similarly, but only from his younger years when he lived near Wesson. He also would have testified about an incident when young Wesson threw rocks at other children, apparently for no reason.

As before, this testimony is largely cumulative of Wesson's sister Yvette's testimony about his home life, and its omission thus did not prejudice Wesson. Reasonable jurists could not debate that this ineffective-assistance claim lacks merit.

Second, Wesson contends that he received ineffective assistance because his counsel did not present evidence of Wesson's efforts to redeem himself by participating in a substance abuse program for several months leading up to the crime. In the months before the murder, Wesson attempted to treat his alcohol addiction at a community health center. He was sober for a time, but relapsed about a month before the murder. Because Wesson's efforts on this front failed, counsel

reasonably decided that emphasizing them would do more harm than good. Reasonable jurists could not debate that this claim for ineffective assistance of counsel lacks merit.

Third, Wesson claims that he received ineffective assistance because his counsel did not call an expert to testify about fetal alcohol spectrum disorder (FASD). Dr. Smalldon's testimony on this topic came up short, he explained, because it lacked a definitive diagnosis and connection to Wesson's crime. True, Smalldon did not diagnose Wesson with the disorder, but he did diagnose Wesson with fetal alcohol effect, and he explained that Wesson's impairments would be similar to FASD: an inability to assess behavioral consequences and respond to social and personal cues. Smalldon added that Wesson's fetal alcohol effect "contribut[ed] to the formation of personality dysfunction," included "another risk factor that often plays a major role in the person's adaptation to his or her life circumstances," and affected the way Wesson "respond[ed] to developmental stressors." R.13-26 at 135. That Wesson believes Smalldon should have testified in a slightly different manner does not make counsel deficient. Any mitigating difference between FASD and fetal alcohol effect is sufficiently minor that its omission did not prejudice him. Reasonable jurists could not debate that this claim for ineffective assistance of counsel lacks merit.

Because reasonable jurists could not debate that these parts of Wesson's claim for ineffective assistance of counsel lack merit, we will not disturb the district court's dismissal of them as procedurally defaulted. Just as reasonable jurists could not debate the district court's resolution of the two claims Wesson asks us to add to his COA, they also could not conclude that the claims are adequate to deserve encouragement to proceed further. So Wesson has not made a substantial showing of the denial of a federal constitutional right.

Accordingly, we **DENY** Wesson's application to expand his COA. The Clerk's Office shall issue a briefing schedule.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

- 10 -